IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL TURNBULL, | CASE NO. 1:21-cv-869 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | |
| WARDEN WANZA JACKSON-MITCHELL, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Michael Turnbull filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. When he filed his petition, Turnbull was in custody at the Warren Correctional Institution due to a journal entry of sentence in the case *State v. Turnbull*, Richland County Court of Common Pleas, Case No. 2018CR0986.[1] The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

---

[1]     Turnbull has since been released. Doc. 16.

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Fifth Appellate District summarized the facts underlying Turnbull's conviction as follows:

> {¶2} In the months leading up to October 22, 2018, Leslie Anne Fields-Turnbull called the police because Turnbull was physically and mentally abusing her and forcing her to sell drugs for him. Turnbull told her that she had to sell to people because she was a "working ass ho." 1T. at 221. Ms. Fields-Turnbull testified that Turnbull told Ms. Fields-Turnbull to try a "pink pill." 1T. at 222. She did not know what it was and instead gave it to law enforcement. *Id*. Ms. Fields-Turnbull went to law enforcement out of fear because he had become abusive towards their children and herself. In working with law enforcement, Ms. Fields-Turnbull was told to stay away from the house for her safety, so she took her children, telling Turnbull that she had a family emergency, and stayed with her parents.
>
> {¶3} On October 22, 2018, Turnbull left his home to go out of town. He told Ms. Fields-Turnbull she needed to sell his drugs for him and instructed her as to where they were hidden within the home. Ms. Fields-Turnbull then called METRICH. Ms. Fields-Turnbull testified that the residence was titled in her name. She signed a written consent to search the home and showed the officers where to find the drugs.
>
> {¶4} On arrival, officers saw that there were surveillance cameras around the residence, an indicator of trafficking. Ms. Fields-Turnbull told officers that the drugs would be located in a bucket in the basement. Inside the bucket, officers found a large chunk of a white substance, green vegetable matter, and forty-nine pink pills believed to be Ecstasy. Officers also found a digital scale, a razor

blade knife, rolling papers, marijuana grinder, which the officers testified, were indicative of trafficking.

{¶5} The white substance tested positive as 3.26 grams of cocaine. The green vegetable matter tested positive as marijuana and weighed 259.6 grams. The tablets tested positive as 37.2 grams of MDMA.

{¶6} Turnbull and Ms. Fields-Turnbull's wedding anniversary was on August 23. On October 24, 2018, Turnbull texted Ms. Fields-Turnbull, indicating that he believed that she stole his drugs and he had people ready to buy them.

*State v. Turnbull*, No. 19CA12, 2019 WL 5092623, at *1 (Ohio Ct. App. Oct. 10, 2019).

### Procedural background

*Trial court proceedings*

In November 2018, the Richland County Grand Jury indicted Turnbull on one count of aggravated trafficking in methylenedioxymethamphetamine (MDMA), one count of aggravated possession of MDMA, one count of trafficking in cocaine, one count of possession of cocaine, one count of trafficking in marijuana, and one count of possession of marijuana. Doc. 8-2, at 2–3 (Exhibit 1). Turnbull, through counsel, pleaded not guilty. *Id.* at 6 (Exhibit 2).

The morning of the jury trial, the trial court discussed with the parties the state's indication that it intended to introduce into evidence text messages between Turnbull and his wife. Doc. 8-3, at 4 (trial transcript). Turnbull's counsel objected. *Id.* at 5. Counsel stated that he hadn't received the

3

information until three days before the trial, the text messages were irrelevant to the charges in the case, and there was "no actual identification" that Turnbull's telephone number was the number in the text messages. *Id*. at 5–6. After discussion, the trial court found that text messages dated after October 24, 2018, could be admitted. *Id*. at 6–8.

The state called Turnbull's wife as its first witness. Doc. 8-3, at 202. Outside of the jury's presence, Turnbull told the court that he had a motion prepared that he wished to file requesting that under Ohio's spousal privilege law, the court prohibit Turnbull's spouse from testifying about communications made during Turnbull's marriage. Doc. 8-2, at 8 (Exhibit 3); Doc. 8-3, at 202–03. Turnbull argued that he couldn't file the motion until his wife was actually called as a witness because, until then, he was not certain that the state would call her to testify. Doc. 8-3, at 203. The state argued that Turnbull knew for several months that his wife was the state's main witness, so Turnbull's motion should have been filed at least seven days before trial. *Id*. at 204–12. The court found that Ohio spousal immunity law applied but ruled in favor of the state, because the court found that Turnbull waited too long to raise the issue. *Id*. at 212–13.

The jury found Turnbull not guilty of aggravated trafficking of MDMA (count one) and trafficking in cocaine (count three) and guilty of the remaining charges. Doc. 8-2, at 12–21 (Exhibit 4). The court later sentenced Turnbull to 24 months in prison for aggravated possession of MDMA (count two); 12

months in prison for possession of cocaine (count four); 24 months in prison for trafficking in marijuana (count five); and 12 months in prison for possession of marijuana (count six). The court ordered counts four and six to run concurrently to count five, and counts two and five to run consecutively, for a total of 48 months in prison. *Id*. at 24 (Exhibit 5).

> *Direct appeal*

Turnbull, through new counsel, appealed to the Ohio court of appeals. Doc. 8-2, at 27 (Exhibit 6). In his brief, he raised the following assignments of error:

> 1. The trial court erred in not informing the spousal witness of her rights against self-incrimination and affirmatively determining whether her testimony is voluntary.
>
> 2. The trial court erred in overruling the exertion of the spousal privilege by appellant.

*Id*. at 36 (Exhibit 7). In October 2019, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 72–80 (Exhibit 9).

In November 2019, Turnbull, pro se, appealed to the Ohio Supreme Court. Doc. 8-2, at 83 (Exhibit 10). In his memorandum in support of jurisdiction, Turnbull raised the following propositions of law:

> I. The trial court erred in not informing the spo[u]sal witness of her right against self-incrimination and affirmatively determining whet[he]r her testimony is voluntary.
>
> II. The trial court erred in overruling the exertion of the spousal privilege by appellant.

5

Doc. 8-2, at 90 (Exhibit 11). In February 2020, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Turnbull's appeal. *Id*. at 106 (Exhibit 13).

*Ohio Appellate Rule 26(B) Application to reopen*

In January 2020, Turnbull pro se filed under Ohio Appellate Rule 26(B) an application for reopening with the Ohio court of appeals. Doc. 8-2, at 108 (Exhibit 14). As grounds for reopening the appeal, Turnbull argued that appellate counsel provided ineffective assistance for not raising the following assignments of error on appeal:

> 1.  The trial counsel was ineffective in [the] selection of the jury members.
>
> 2.  The prosecution use[d] their peremptory challenges to exclude[] all men from the jury.

Doc. 8-2, at 110. The next month, Turnbull filed a motion for leave to amend his application to reopen. *Id*. at 115 (Exhibit 15). Turnbull stated that he had mistakenly submitted a draft the month before. *Id*. In his motion, Turnbull proposed the following assignments of error:

> 1.  Trial counsel was ineffective in not raising a Batson challenge or for not objecting to an all women jury violating Mr. Turnbull's constitutional right to a fair jury panel and trial.

6

> 2. The evidence presented at trial was insufficient to convict Mr. Turnbull of any of the counts and his convictions were against the weight of the evidence.

*Id*. at 118–19.

In March 2020, the Ohio court of appeals denied Turnbull's motion to amend as untimely and without good cause to excuse the untimeliness. Doc. 8-2, at 141–44 (Exhibit 16). The same day, the court denied Turnbull's application for reopening, finding that Turnbull failed to show a "genuine issue as to whether [Turnbull] was deprived of the effective assistance of counsel on appeal." *Id*. at 151 (Exhibit 17). Turnbull moved for reconsideration, which the Ohio court of appeals denied. *Id*. at 154 (Exhibit 18), 160–61 (Exhibit 19).

In July 2020, Turnbull appealed to the Ohio Supreme Court. Doc. 8-2, at 163 (Exhibit 20). In his memorandum in support of jurisdiction, he raised the following propositions of law:

> I. Trial counsel was ineffective in not raising a Batson challenge or for not objecting to an all women jury violating Mr. Turnbull's constitutional right to a fair jury panel and trial.

> II. The evidence presented at trial was insufficient to convict Mr. Turnbull of any of the counts and his convictions were against the weight of the evidence.

Doc. 8-2, at 168 (Exhibit 21). In September 2020, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Turnbull's appeal. *Id*. at 240 (Exhibit 25).

*Federal habeas corpus petition*

On April 21, 2021, Turnbull filed a federal habeas corpus petition under

28 U.S.C. § 2254.[2] Doc. 1. He raised the following grounds for relief:

> **Ground one**: The trial court erred in not informing the spousal witness of her right against self-incrimination and affirmatively determining whether her testimony is voluntary.
>
> *Supporting facts*: The trial court did not determine under 601(B)(2) that the witness spouse made a deliberate choice to testify, with knowledge of her right to refuse. Violating Mr. Turnbull's Constitutional right to a fair trial.[3]
>
> **Ground two**: The trial court erred in overruling the exertion of the spousal privilege by appellant-petitioner.
>
> *Supporting facts*: The court found the privilege existed, but that was waived because not timely interposed. The election of privilege came in the form of a motion, and prosecution argued that the motion was not timely made. The court agreed with the prosecution and allowed the testimony to go forward. Petitioner was prejudiced by counsels actions which violated his protected Constitutional Rights to a fair trial.
>
> **Ground three**: Trial court was ineffective in not raising a Batson challenge or for not objecting to an all women jury violating Mr. Turnbull's Constitutional Right to a fair jury panel and trial.

---

[2]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Turnbull states that he placed his Petition in the prison mailing system on April 21, 2021. Doc. 1, at 15.

[3]     Turnbull's grounds for relief and supporting facts are reproduced as written and have not been edited.

> *Supporting facts*: Petitioner Turnbull was prejudiced by an all-white and all women jury when the State's only alleged actual witness was a woman who was white. The State's witness aggressively painted a stereotypical picture of Petitioner as a black man, who is violent and sells drugs, violating his Constitutional Right to be free from prejudice during trial.
>
> **Ground four**: The evidence presented at trial was insufficient to convict Mr. Turnbull of any of the counts and his convictions were against the weight of the evidence.
>
> *Supporting facts*: Petitioner Turnbull is innocent and the jury lost their way when they found him guilty.

Doc. 1, at 5–10. The Warden filed a Return of Writ, Doc. 8, and Turnbull filed a Traverse, Doc. 11-2.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state

remedies are "still available at the time of the federal petition." *Id*. (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id*.

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no

11

longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially

12

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard.

*Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    Grounds one and two are procedurally defaulted and not cognizable*

Grounds one and two are related, so I will address them together. In ground one, Turnbull argues that the trial court violated his constitutional rights when the court failed to determine under Ohio Rule of Evidence 601 whether Turnbull's wife affirmatively volunteered to testify. Doc. 1, at 5. In ground two, Turnbull argues that the trial court erred when it overruled Turnbull's motion to invoke Turnbull's spousal privilege, which is based on Ohio law. *Id*., at 7.

As an initial matter, Turnbull only presented these grounds for relief to the Ohio courts as state law violations, not federal constitutional issues. *See* Doc. 8-2, at 33–41 (appellate brief to the Ohio court of appeals) at 86–93 (brief in support of jurisdiction to the Ohio Supreme Court). Because Turnbull failed

14

to present his grounds to the state courts as federal constitutional issues, he has procedurally defaulted any federal constitutional claims.[4] *See Koontz*, 731 F.2d at 368 (a "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law."); *McMeans*, 228 F.3d at 681.

For cause to excuse any procedural default, Turnbull submits that he lacks legal skills and was required to rely on help from other prison inmates when filing his motions and appeals. Doc. 11-2, at 2. But a petitioner's pro se status and ignorance of the law are insufficient to show cause to excuse a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Moreover, Turnbull had counsel on direct appeal. In that regard, ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted and the court finds that appellate counsel was constitutionally ineffective. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Here, Turnbull didn't argue in his Rule 26(B) Application to Reopen that appellate counsel was ineffective for failing to argue that the trial court's ruling allowing Turnbull's spouse to testimony violated Turnbull's federal constitutional rights. So Turnbull procedurally defaulted any ineffective

---

[4] The Warden did not allege that grounds one and two are procedurally defaulted. But a court may raise the procedural default issue on its own. *See Martin v. Warden, Belmont Corr. Inst.*, No. 2:21-cv-5102, 2022 WL 1656770, at *1–2 (S.D. Ohio May 25, 2022) (collecting and discussing cases), *objections overruled*, 2023 WL 2529059 (S.D. Ohio Mar. 13, 2023).

15

assistance of appellate counsel claim that could otherwise potentially serve as cause to excuse his procedural default.

Finally, Turnbull has not shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Turnbull alleges actual innocence, Doc. 11-2, at 2, but to support his claim he recites testimony presented at trial which, Turnbull alleges, shows that he was out of town when the crimes occurred, Doc. 11-2, at 11–14, 17, 26.[5] But trial testimony isn't "new reliable evidence … that was not presented at trial." *Schlup*, 513 U.S. at 324. So Turnbull hasn't shown actual innocence.

Even if Turnbull had fairly presented grounds one and two to the state courts as state-law violations that allegedly rose to the level of federal constitutional violations, his claims would still fail. Alleged state-law errors regarding the admissibility of evidence usually are not cognizable on federal

---

[5] There is no dispute that Turnbull was out of town when officers found drugs in his house. *See* Doc. 8-3, at 195, 224–25, 228, 231–32, 234; Doc. 8-4, at 113 (state's closing argument). But that doesn't mean that Turnbull didn't possess the drugs that were found in his house.

habeas review. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). But "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512. Nevertheless, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id*. (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), in turn quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

Ohio's spousal privilege law does not implicate fundamental due process concerns. *See Sandoval v. Toledo Corr. Inst*., 409 F. App'x 847, 850 (6th Cir. 2010) ("Because the [spousal] privilege claimed by Sandoval is granted by [Ohio] state law only, and because any error in violating that privilege does not rise to the level of fundamental unfairness prohibited by due process, the trial court's error in admitting Mrs. Sandoval's testimony does not support granting a petition for a writ habeas corpus."); *see also Foster v. Banks*, No. 1:10-cv-1578, 2014 WL 3810634, at *6–7 (N.D. Ohio Aug. 1, 2014); *Bruce v. Welch*, No. 1:10-cv-2894, 2013 WL 161810, at *6 (N.D. Ohio Jan. 15, 2013), *aff'd on other grounds*, 572 F. App'x 325 (6th Cir. 2014). So grounds one and two, based on Ohio's spousal privilege, are not cognizable.

## 2.    *Ground three is procedurally defaulted.*[6]

In Ground three, Turnbull alleges that trial counsel was ineffective for not raising under *Batson v. Kentucky*, 476 U.S. 79 (1930), a challenge or otherwise not objecting to an all-white, all-female jury. Doc. 1, at 8. Turnbull states that he was prejudiced by such a jury because the state's "only alleged actual witness" was a white woman who "aggressively painted a stereotypical picture" of Turnbull as a violent Black man who sells drugs. *Id.*

### 2.1   *Batson claim*

In *Batson v. Kentucky*, the United State Supreme Court ruled that, under the Equal Protection Clause, a party may not use peremptory challenges to exclude members of the jury venire on account of their race. 476 U.S. at 89. The rule in *Batson* was later extended to include gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130–31 (1994).

Ground three is procedurally defaulted because Turnbull didn't raise it on direct appeal, as he was required to do. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)).

Turnbull raised ground three as part of his Rule 26(B) Application for reopening. Turnbull alleged that *appellate* counsel was ineffective for failing to

---

[6]    The Warden hasn't alleged that ground three is procedurally defaulted, but a court may raise the procedural default issue on its own. *See Martin*, 2022 WL 1656770, at *1–2.

raise, on direct appeal, a claim that trial counsel was ineffective for failing to challenge an all-white, all-female jury. Doc. 8-2, at 110. But a claim of ineffective assistance of *appellate* counsel doesn't preserve Turnbull's ineffective assistance of *trial* counsel claim. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim [on appeal] does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'") (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)).

Nevertheless, Turnbull's ineffective assistance of appellate counsel claim could serve as cause to excuse the procedural default if appellate counsel was constitutionally ineffective. *See Edwards*, 529 U.S. at 451–53.

This Court conducts de novo review of an ineffective assistance of counsel claim when determining whether it can establish cause to excuse a procedural default. *See Chase v. MacCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009)). The standard in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Turnbull must show that counsel's assistance was objectively unreasonable and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "Counsel's failure to raise an issue on appeal could only be ineffective

19

assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Turnbull concedes that at trial, defense counsel, after consulting with Turnbull, decided to use peremptory strikes on two men.[7] Doc. 11-2, at 20; Doc. 8-3, at 153, 171, 172. And the prosecutor also struck two men. *Id*. at 172. Beyond that, Turnbull hasn't identified "any other circumstances evident from the record sufficient to suggest that the removal of those jurors was 'motivated by [gender].'" *Parks v. Warren*, 278 F. Supp. 3d 975, 986 (E.D. Mich. 2017) ("it is well-accepted that something more must be shown to establish racial motivation, beyond removal of one or more members of the venire of a certain race") (citing *Hernandez v. New York*, 500 U.S. 352, 361 (1991), *United States v. Harper*, 545 F. App'x 329, 337 (6th Cir. 2013), and *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988)), *aff'd sub nom. Parks v. Chapman*, 815 F. App'x 937 (6th Cir. 2020); *see also Batson*, 476 U.S. at 97 ("the defendant must show that these facts [of the prosecutor striking prospective jurors] and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.").

---

[7]     The state used two peremptory strikes—both to excuse men—and Turnbull's counsel used his peremptory strikes on two men and one woman. Doc. 8-3, at 172–74.

In fact, when jury selection was complete, after each side had passed on further peremptory strikes, Turnbull's counsel noticed that there was only one man seated on the jury.[8] Doc. 8-3, at 174. Turnbull's counsel then mentioned that the state "wants [a particular male juror]," but that defense counsel "can't get to [that juror]." *Id.* at 175. This discussion on the record indicates that Turnbull's counsel had a strategy for selecting the jurors that counsel selected. *See Strickland*, 466 U.S. at 689 (1984) ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). And "errors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner. '[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

Simply put, Turnbull hasn't shown that trial counsel was ineffective. So he hasn't shown that there is a reasonable probability that an ineffective-assistance-of-trial-counsel claim would have prevailed on direct appeal, and appellate counsel could not have been ineffective for failing to raise it. *See*

---

[8] After all the evidence was heard, the Court randomly selected an alternate juror, and the number drawn belonged to the lone male juror. Doc. 8-4, at 136.

*Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019) ("Because failure [of appellate counsel] to raise a meritless claim is not ineffective assistance, Bennett must establish a reasonable probability that her trial-counsel claims would have prevailed on direct appeal."). And as for race, Turnbull hasn't alleged that any Black jurors were struck by either side. So he hasn't shown that counsel had anything to object to during the peremptory challenges.

### 2.2    Fair cross-section claim

To the extent that Turnbull alleges that counsel was ineffective for failing to object that the jury wasn't drawn from a fair cross-section of Turnbull's community, that claim is also procedurally defaulted because Turnbull didn't raise this issue on direct appeal. And Turnbull hasn't shown cause to excuse the procedural default or actual prejudice.

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). To establish a prima facie fair-cross-section claim, Turnbull must show that: (1) "the group alleged to be excluded is a 'distinctive' group in the community; (2) the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Berghuis*, 559 U.S. at 319 (quoting *Duren v. Missouri*, 439

U.S. 357, 364 (1979)). A petitioner who makes a prima facie case shows cause to excuse a procedural default. *See Ambrose v. Booker*, 684 F.3d 638, 645–49 (6th Cir. 2012); *Parks*, 815 F. App'x at 944. Turnbull satisfies the first element of a prima facie case but provides no allegations, argument, or evidence as to the remaining two elements. Because Turnbull hasn't alleged a prima facie fair cross-section claim, he hasn't shown cause to excuse the procedural default.

Even if Turnbull's bare assertion could constitute cause, Turnbull must also show actual prejudice—that under *Strickland* the outcome at trial would have been different. *See Ambrose*, 684 F.3d at 649–50; *Parks*, 815 F. App'x at 944–45. The trial transcripts show that Turnbull's spouse testified that she owned a house, that Turnbull lived in the house, and that Turnbull kept drugs in the house. Doc. 8-3, at 218–27. Drugs—marijuana, cocaine, and MDMA— were found in the house. *Id*. at 226–27, Doc. 8-4, at 41–43, 73. Near where the drugs were found, officers found a digital scale and razor blades. Doc. 8-4, at 43. They also found rolling papers and plastic baggies in a dresser drawer in the bedroom, including individual baggies containing small amounts of marijuana. *Id*. at 46–48. All of this is sufficient evidence to show that Turnbull possessed marijuana, cocaine, and MDMA and that he sold marijuana. Moreover, the jury acquitted Turnbull of trafficking in cocaine and MDMA. Unlike with marijuana, there was no evidence that Turnbull prepared for sale the cocaine and MDMA. *See, e.g.*, Doc. 8-4, at 125. This shows that the jury relied on the evidence that the officers found, and undercuts Turnbull's

23

assertion that the all-white, all-female jury convicted him because they sympathized with Turnbull's wife, who is white.

All told, Turnbull hasn't shown that there is "a reasonable probability that a different (*e.g.*, properly selected) jury would have reached a different result, 'a probability sufficient to undermine confidence in the outcome of the trial.'" *See Ambrose v. Booker*, 801 F.3d 567, 578 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694). So Turnbull hasn't shown actual prejudice, and his fair cross-selection claim is procedurally defaulted. *See id*.

### 3.    *A portion of ground four is not cognizable. The remainder is procedurally defaulted and, alternatively, fails on the merits*

In ground four, Turnbull argues that the evidence at trial was insufficient to convict him. Doc. 1, at 10. He also states that his convictions were against the manifest weight of the evidence. *Id*. Turnbull's manifest weight claim is not cognizable on federal habeas review. *See Jaeger v. Wainwright*, No. 1:19-cv-2853, 2023 WL 6554265, at *22 (N.D. Ohio Sept. 1, 2023) (citing and discussing cases), *report and recommendation adopted*, 2023 WL 6282944 (N.D. Ohio Sept. 27, 2023).

Turnbull's insufficient evidence claim is procedurally defaulted. This is so because Turnbull should have, but didn't, raise this claim on direct appeal. *See Buell*, 274 F.3d at 349 (claims based on the record must be raised on direct appeal). And ineffective assistance of appellate counsel for failing to raise the issue on appeal can't serve as cause to excuse the procedural default because Turnbull procedurally defaulted his ineffective assistance of appellate counsel

24

claim. *See Edwards*, 529 U.S. at 451–53 (Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted). Turnbull included an ineffective assistance of appellate counsel claim for failing to argue insufficient evidence in his motion for leave to amend his Rule 26(B) Application to Reopen. Doc. 8-2, at 119–20. But the Ohio court of appeals denied Turnbull's motion as untimely. *Id*. at 141–44. It rejected Turnbull's assertion that he gave the wrong envelope to the prison as "good cause" to excuse the late filing. *Id*. at 144. And Turnbull hasn't shown cause to excuse *that* procedural default.

Even if Turnbull could show cause to excuse the procedural default, Turnbull's sufficiency of the evidence claim fails on the merits for the reasons explained above—the evidence presented at trial was sufficient to support Turnbull's drug possession and marijuana trafficking convictions. So either way, Turnbull isn't entitled to relief on ground four.

### 4.    *Turnbull's additional ground raised in his traverse is improper*

In his traverse, Turnbull raises a new ground for relief. Doc. 11-2, at 25. Turnbull alleges that the Ohio court of appeals erred when it failed to remand his case for resentencing. *Id*. But a petitioner can't raise a new ground for relief in a traverse. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2000). So Turnbull's new ground for relief raised for the first time in his traverse is improper and the Court is not required to address it. *See id*.

**Conclusion**

For the reasons set forth above, I recommend that Turnbull's Petition be dismissed.

Dated: October 30, 2023

                        */s/ James E. Grimes Jr.*
                        James E. Grimes Jr.
                        U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).